**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**RICHARD LAY**                                    **CIVIL ACTION**

**VERSUS**                                         **NO. 10-4162**

**ROBERT TANNER, WARDEN**                          **SECTION "A"(6)**

## REPORT AND RECOMMENDATION

This matter was referred to the United States Magistrate Judge for the purpose of conducting hearings, including an evidentiary hearing, if necessary, and submission of proposed findings and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), and as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases.  Upon review of the entire record, the court has determined that this matter can be disposed of without an evidentiary hearing.   For the following reasons, it is hereby recommended that the instant petition be **DISMISSED WITH PREJUDICE**.

**PROCEDURAL HISTORY[1]**

On March 29, 2007, following a jury trial in the Twenty-Second Judicial District Court for the Parish of St. Tammany, petitioner, Richard Lay, currently incarcerated in Hunt Correctional Center, St. Gabriel, Louisiana, was found guilty of one count of attempted possession of cocaine.[2]  On March 30, 2007, the State filed a multiple bill of information against petitioner.[3]  On April 16, 2007, petitioner was sentenced to two and one-half years of imprisonment.  On May 31, 2007, pursuant to the state's multiple bill, petitioner was adjudicated a fourth felony offender and was sentenced to 20 years imprisonment at hard labor without benefit of probation or suspension of sentence.

On June 6, 2008, the Louisiana First Circuit Court of Appeal affirmed petitioner's conviction, habitual offender adjudication, and sentence.  *State v. Lay*, 2008 WL 2332261, No. 2007-KA-2155 (La. App. 1 Cir. June 6, 2008).  On June 19, 2009, the Louisiana Supreme Court denied petitioner's writ application.  *State ex rel. Lay v. State*, 10 So.3d 726 (La. 2009).  On October 13, 2009, the United States Supreme Court denied petitioner's application for writ of certiorari.  *Lay v. Louisiana*, _ U.S. _, 130 S.Ct. 409, 175 L.Ed.2d 280 (2009).

---

[1]A portion of the procedural history was taken from the Louisiana First Circuit Court of Appeal's opinion, *State v. Lay*, 2008 WL 2332261, No. 2007-KA-2155 (La. App. 1 Cir. June 6, 2008).

[2]A copy of the jury verdict is contained in the State rec., vol. 2 of 13, p. 445.

[3]A copy of the multiple bill is contained in the State rec., vol. 2 of 3, p. 447.

Following the conclusion of his direct appeal proceedings, petitioner filed numerous pleadings in the state court system seeking relief in connection with his conviction and multiple offender adjudication.  These pleadings included a motion to vacate and set aside multiple bill adjudication and sentence filed in December, 2008, a motion to correct illegal sentence filed in January 2010, and an application for post-conviction relief filed in February, 2010.  Given these pleadings and based on the fact that petitioner filed his federal habeas corpus application on October 22, 2010, the State, in its original opposition memorandum (rec. doc. 35, p. 3), conceded that the instant action is timely.  However, the State questioned whether petitioner had exhausted his state court remedies with regard to some of his claims as required under *Rose v. Lundy*, 455 U.S. 509, 102 S. Ct. 1198, 71 L. Ed. 2d 379 (1982).  (*See* Rec. doc. 35, pp. 3-4).  The State, however, was unable to firmly establish, based upon the state court record, whether petitioner had failed to exhaust all of his claims.  For this reason, the undersigned issued an Order (rec. doc. 41) directing the State to submit a supplemental memorandum addressing the merits of petitioner's claims.[4]

---

[4]In support of the above-referenced Order, the undersigned cited *Sartain v. Cooper*, 2008 WL 4758609, *3 (E.D.La. Oct. 29, 2008) (Moore, M.J.) (adopted by Barbier, J.), wherein the court, based upon the fact that the state court record was insufficient for the purpose of determining with certainty the applicability of a procedural bar, proceeded to address the merits of petitioner's claims. Further authority for addressing the merits of petitioner's claims can be found in 28 U.S.C. § 2254(b)(2) which provides: "An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."

As noted above, petitioner, on October 22, 2010, filed the instant federal habeas corpus application, raising the following claims:  1) The trial judge, Twenty-Second Judicial District Court Judge Coady, lacked jurisdiction to adjudicate petitioner's competency to proceed to trial due to pending recusal motions; 2) Ad Hoc Judge DiMiceli lacked authority to deny petitioner's recusal motions ex parte and to rule on petitioner's pro se motions; 3) All acts committed by Judge Coady after December 14, 2006 are null and void since there has never been a lawful determination of petitioner's competency to proceed since Judge Coady lacked authority to make a competency determination due to petitioner's outstanding recusal motions; 4) Judge Coady denied petitioner his right to pre-trial self-representation; 5) the State's evidence failed to prove that the substance petitioner possessed was cocaine as charged in the bill of information and not macadamia nuts; 6) Judge Coady denied petitioner the right to post-trial self representation; 7) the constructive amendment of the bill of information after the jury was sworn was improper; 8) trial counsel was ineffective; 9) Judge Coady was without authority to impose the original sentence and the multiple offender sentence due to petitioner's outstanding motions to recuse; 10) appellate counsel was ineffective; 11) Judge Coady and Judge Winberg unlawfully denied petitioner post-conviction relief without an evidentiary hearing;[5] 12) efforts to seek relief from the state courts are futile; 13) he has improperly been denied access to documents; 14) the appellate

_____

[5]Petitioner subsequently filed a motion to delete Claim 11 with regard to Judge Winsberg (rec. doc. 40) and this court granted petitioner's motion (rec. doc. 41).

4

court's rulings denying relief based upon Judge DiMiceli's rulings are clearly erroneous since Judge DiMiceli lacked authority;[6] 15) prior convictions were improperly used to enhance petitioner's sentence;[7] 16)  his constitutional rights were violated by virtue of the fact that he had fully served his original sentence before he was adjudicated a multiple offender and resentenced to 20 years incarceration.[8]  The court shall proceed to address the merits of petitioner's claims following its review of the pertinent facts and applicable standard of review.

**FACTS**[9]

On April 16, 2004, Deputy Tyrone Washington, with the St. Tammany Parish Sheriff's Office, was working undercover as a drug dealer in the front yard of the residence of Bruce Whitehead.   Whitehead had been arrested earlier that evening for narcotics transactions at his residence.  In what is known as a "reversal," after Whitehead was removed from his residence, Deputy Washington posed as someone who was selling drugs in Whitehead's stead.  When potential buyers would approach Deputy Washington and ask of Whitehead's whereabouts, Deputy Washington would tell them that Whitehead was not there,

---

[6]Claim 14) is set forth in petitioner's amended petition (rec. doc. 8).

[7]Claim 15) is set forth in petitioner's second amended petition (rec. doc. 12).

[8]Claim 16) is set forth in petitioner's traverse (rec. doc. 58).

[9]The facts are taken from the Louisiana First Circuit Court of Appeal's opinion, *State v. Lay*, 2008 WL 2332261, No. 2007-KA-2155 (La. App. 1 Cir. June 6, 2008).

and that he was conducting business for Whitehead.  Deputy Washington was not selling real drugs.  Instead, he was using pieces of macadamia nuts to resemble rocks of crack cocaine.

Petitioner approached Deputy Washington and inquired about purchasing cocaine.[10]  After some discussion, petitioner took possession of five facsimile rocks of cocaine.  Petitioner then gave four rocks back to Deputy Washington and kept one rock so that he could test it since this crack cocaine did not appear to be what Whitehead usually sold.  Petitioner pulled out rolling papers to smoke the rock.  Before petitioner could roll the rock and test it, he was arrested.  The transaction was videotaped and audiotaped.

## STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal habeas corpus legislation, including 28 U.S.C. § 2254.  Amended subsections 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law, and mixed questions of law and fact.  Provided that the state court adjudicated the claim on the merits, pure questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1) and questions of fact are reviewed under § 2254(d)(2).  *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000).

---

[10]Deputy Washington and petitioner knew each other from growing up together around the same area.

As to questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision unless it "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The United States Supreme Court has noted:

> § 2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning. A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in *Williams[ v. Taylor*, 529 U.S. 362 (2000)] that an unreasonable application is different from an incorrect one.

*Bell v. Cone*, 535 U.S. 685, 694, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002) (citations omitted).

As to questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); *see also Hill*, 210 F.3d at 485; 28 U.S.C. § 2254(e)(1).

## ANALYSIS

### Claims 1), 2), 3), and 14):  Lack of Jurisdiction/Authority of Judge Coady and Ad Hoc Judge DiMiceli

Petitioner claims that the trial judge, Judge Martin Coady, lacked jurisdiction to adjudicate his competency to proceed to trial due to the fact that petitioner had pending motions to recuse Judge Coady.  Further, due to Judge Coady's lack of jurisdiction, petitioner asserts that he was not properly deemed competent to proceed; therefore, all subsequent proceedings, including those presided over by Judge Coady and Ad Hoc Judge DiMiceli were null and void.  Petitioner further claims that Ad Hoc Judge DiMiceli lacked authority to issue a ruling denying petitioner's motions to recuse Judge Coady without conducting a hearing.[11]

It is well established that federal habeas review is limited to questions of constitutional dimension.  *See generally Jernigan v. Collins*, 980 F.2d 292, 298 (5th Cir. 1992), *cert. denied*, 508 U.S. 978, 113 S.Ct. 2977, 125 L.Ed.2d 675 (1993); *Castillo v. Johnson*, 141 F.3d 218, 222 and 224 (5th Cir.), *cert. denied*, 524 U.S. 979, 119 S.Ct. 28, 141 L.Ed.2d 788 (1998).  Petitioner has failed to identify a United States Supreme Court ruling

---

[11]As the Louisiana First Circuit explained, in connection with petitioner's direct appeal, petitioner filed pro se motions to recuse the assistant district attorney and the trial judge, Judge Martin Coady. The motion to recuse Judge Coady was ultimately assigned to Judge Elaine DiMiceli. On December 14, 2006, Judge DiMiceli denied petitioner's motion to recuse Judge Coady.  Thereafter, petitioner filed a pro se motion to recuse Judge DiMiceli.  Judge Coady subsequently denied petitioner's motion to recuse Judge DiMiceli.  *Lay*, 2008 WL 2332261 at *4 and n.7.

which holds that a defendant's due process rights are violated by virtue of a trial court's determination of defendant's competency to proceed to trial while defendant's motions to recuse the trial judge are pending.[12]  Nor has petitioner cited any Supreme Court ruling holding that a defendant's constitutional rights are violated if his motions to recuse the trial judge are adjudicated without a hearing.  Further, this court is not aware of any such Supreme Court rulings.

Where the jurisprudence of the United States Supreme Court does not clearly support a petitioner's claim, it cannot be said that a state court's ruling impermissibly ran afoul of "clearly established Federal law" for purposes of § 2254(d)(1).  *See Wright v. Van Patten*, 552 U.S. 120, 126, 128 S.Ct. 743, 747, 169 L.Ed.2d 583 (2008) ("Because our cases give no clear answer to the question presented, let alone one in [petitioner's] favor, it cannot be said that the state court unreasonably applied clearly established Federal law."); *Gilson v. Leblanc*, 2009 WL 2046166, *3 (E.D.La. July 14, 2009) (Knowles, M.J.) (adopted by

---

[12]Petitioner, in his traverse (rec. doc. 61, pp. 2 and 3), cites three Supreme Court cases, *Neder v. U.S.*, 527 U.S. 1, 8, 119 S.Ct. 1827, 1833, 144 L.Ed.2d 35, Arizona *v.* Fulminante, 499 U.S. 279, 310, 111 S.Ct. 1246, 1265, 113 L.Ed.2d 302 (1991), and In *re Murchison*, 349 U.S. 133, 136-139, 75 S.Ct. 623, 625-627, 99 L.Ed. 942 (1955), which allegedly stand for the proposition that the trial judge, with a recusal motion pending , is biased against a defendant  and, therefore, lacks the power to rule on pending motions, such a motion to determine a defendant's competency to stand trial. However, a review of the above-cited cases reveals that in actuality they stand for the general proposition that a biased judge is unconstitutional and, therefore, any ruling by a biased judge would not be valid.  A habeas petitioner, however, has a heavy burden in proving that his trial judge was, in fact, biased against him.  Petitioner has failed to satisfy this burden, offering nothing more than the assumption that the trial judge must have been biased against him because petitioner filed a motion to recuse him.

Barbier, J.).  Accordingly, pursuant to the AEDPA's deferential standard, petitioner's claim must be rejected.

### Claims 4) and 6): Denial of Right of Self-Representation

Petitioner claims that Judge Coady unconstitutionally denied his right to self-representation both pre-trial and post-trial.  In *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), the Supreme Court recognized a defendant's Sixth Amendment right to waive counsel and conduct his own defense.  However, a defendant's decision in this regard must be "knowingly and intelligently made." *McQueen v. Blackburn*, 755 F.2d 1174, 1177 (5th Cir.), *cert. denied*, 474 U.S. 852, 106 S.Ct. 152, 88 L.Ed.2d 125 (1985) (citing *McKaskle v. Wiggins*, 465 U.S. 168, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984); *Faretta,* 422 U.S. 806)).  Further, "[s]uch a waiver must be 'clear and unequivocal'.... *U.S. v. Espinoza*, 374 Fed. Appx. 536, 538 (5th Cir.), *cert. denied*, __ U.S. __, 131 S.Ct. 227, 178 L.Ed.2d 151 (2010) (citing *Burton v. Collins*, 937 F.2d 131, 133 (5th Cir.), *cert. denied*, 502 U.S. 1006, 112 S.Ct. 642, 116 L.Ed.2d 660 (1991)).  "'Where a fundamental constitutional right, such as the right to counsel, is concerned, courts indulge every reasonable presumption against waiver.'" *Espinoza*, 374 Fed. Appx. at 538 (*quoting Burton*, 937 F.2d at 133).

In addressing the instant claim in connection with petitioner's direct appeal, the Louisiana First Circuit first set forth applicable state law which mirrors federal law.

> An accused has the right to choose between the right to counsel, guaranteed in the state and federal constitutions, and the right to self-representation. However, the choice to represent oneself must be clear and unequivocal. Requests which vacillate between self-representation and representation by counsel are equivocal. Whether a defendant has knowingly, intelligently, and unequivocally asserted the right to self-representation must be determined on a case-by-case basis, considering the facts and circumstances of each. *Leger,* 2005-0011, p. 53 [(La. 7/10/06)], 936 So.2d [108], 147-48, [*cert. denied*, 549 U.S. 1221, 127 S.Ct. 1279, 167 L.Ed.2d 100 (2007).]

*Lay*, 2008 WL 2332261 at 4.

Next, the state appellate court reviewed petitioner's antics leading up to trial and on the first day of trial.

> Prior to trial, [petitioner] engaged in dilatory tactics by filing dozens of various pro se motions, including motions to continue, and refusing to communicate with his appointed counsel. [Petitioner] also filed pro se motions to recuse the assistant district attorney and Judge Martin Coady, the trial judge in the instant matter. The motion to recuse Judge Coady had been set for hearing with Judge Elaine DiMiceli on December 1, 2006. On December 14, 2006, Judge DiMiceli denied the motion. The defendant then filed a pro se motion to recuse Judge DiMiceli on December 27, 2006.
>
> At no time prior to the beginning of trial did [petitioner] request, either orally or in writing, to represent himself. In fact, the record indicates [petitioner] insisted on being represented by counsel. [Petitioner] was represented by two other appointed defense counsels before being represented by Mr. Spell, who represented [petitioner] on a pro bono basis. When [petitioner] came into conflict with his appointed counsel, he filed several motions to appoint conflict-free or effective counsel.
>
> On July 28, 2005, Judge Hedges presided over the initial hearing to address the Judge Coady recusal issue. Despite Mr. Fleming having been appointed to represent [petitioner], [petitioner], already in conflict with Mr. Fleming, indicated to the court that he had no attorney and was not proceeding without one:

11

By the Court:

Now, Mr. Lay, you've got a lot of motions here to go through.  I only want to hear the most important ones first.  So what's your most important motion?

By Mr. Lay:

**First of all, I want to know who is my attorney? Because I'm not going through no procedure here without my attorney. I'm not waiving my right to counsel.**

By the Court:

Wait, Mr. Lay.

By Mr. Lay:

**Are you trying to make me represent myself pro se?**

By the Court:

No. No....

At a January 19, 2007 hearing, just two months prior to trial, Mr. Spell reurged

his motion to withdraw as counsel because of conflicts with [petitioner].  In denying the

motion, the trial court stated:

Well, Mr. Lay, we had colloquy last time that included [your] right to represent [yourself] and waive counsel.  And I also invited [you] to have counsel of [your] choice.  And [you] chose not to represent [yourself] nor to have other counsel.  But [you] did want counsel. [You have] had other counsel prior. First the Public Defender's Office, who [you] sued.  They were disqualified.  And then there was other private counsel, who [you] asked to be removed.  They were removed.  Mr. Spell,

12

whom [you] asked for, in the proceeding. [sic]
      I find that basically it's been a design to delay and frustrate the system.  I find that Mr. Spell is a very competent lawyer and understands criminal law and can do a good job for [you].
      [You] may not allow him to do it, but that's [your] decision.
      Therefore, I am denying the motion.

On the day of trial, when [petitioner] informed the trial court that he wanted to represent himself, the trial court reiterated that he had spoken with [petitioner] about this issue, "He advised me earlier, and I went through a colloquy and then Mr. Lay told me quite clearly that he didn't want to represent himself."  Nevertheless, the trial court conducted a thorough *Faretta* hearing to determine whether [petitioner] could make a knowing and intelligent waiver of his right to counsel before being allowed to represent himself.  *See Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).  After some extended non-responsive answers by [petitioner], the hearing concluded as follows:

The Court:
      You interrupted me again.  That's not quite responsive to what I'm saying, what I'm asking.  You understand, sir, that self representation almost always is unwise-

Mr. Lay:
      Yes, it said in *Faretta v. California.*

The Court:
      -unless you make a well-conducted defense that would ultimately be to your own detriment.

13

Mr. Lay:

That's a possibility if you don't know what you want to do and where you want to take it.  I'm the only one know [sic] what's in store.  It's as I say, you must have an ace in the hole.  And I got one.  I got an ace in the hole; gonna shock the whole world and I'll slay Goliath over there.  David will slay Goliath by representing himself, 'cause I got truth [on] my side; he has nothing but lies.  See, it's personal.  It's not justice that we seek today, it's personal.  Richard Lay of the past, a thorn in the State's side.  Let's get rid of Richard Lay.  This is what it's all about.  It's not about justice.  If it was about justice, Richard Lay would have got the same thing his white co-defendant got, whose record is equivalent to his.  Richard Lay would have got probation like everyone else got.  But Richard Lay is going to trial, they would not offer a plea.  And they seek-what'd they say?-a quad bill with a substantial amount of years.  Why? When Richard Lay was willing to plead guilty just for namesake and get rid of everything.  Why single him out?  It's personal. Personal has no place in justice.

The Court:

Well, your ace in the hole, you can talk to your attorney about it.  I believe you need the assistance of counsel.  I think it's in your interest.  I think with assistance you certainly can help your attorney in this defense.  That's my ruling.  I note your objection.

*Lay*, 2008 WL 2332261 at *4 -6 (footnotes omitted; emphasis added).

Thereafter, the Louisiana First Circuit discussed the circumstances which led to petitioner's request to represent himself.

At trial, prior to voir dire, the trial court also conducted the preliminary examination.  The State's only witness for the preliminary examination was Detective Nicholas Powe.  Defense counsel did not cross-examine Detective

14

Powe.  Ostensibly based on defense counsel's decision not to cross-examine the witness, this was the first time [petitioner] asked to represent himself:

> At this time, Your Honor, I'm asking the Court if the Court is not going to allow me to cross-examine Detective Powe to perfect the record, I ask that you-this man asked to withdraw off the case.  I'm very capable and willing to proceed with this matter on my own.  This is what the Court wants anyway.  So therefore I'm asking you to get rid of him because he's not being beneficial to me, as the Court has saw [sic] again, this man is unprepared to proceed in this matter of cross-examination, which is crucial.  We had a preliminary examination to establish probable cause and he's not prepared to cross-examine the only State's witness.

*Lay,* 2008 WL 2332261 at *6.

The state appellate court then reasoned:

> The record shows that [petitioner's] request to represent himself was not an unequivocal one; rather, it was an obfuscated request to substitute appointed counsel because of his disagreement with current counsel's choice of trial strategy.  *See State v. Bridgewater,* 2000-1529, p. 19 (La.1/15/02), 823 So.2d 877, 895, *cert. denied,* 537 U.S. 1227, 123 S.Ct. 1266, 154 L.Ed.2d 1089 (2003).  In quoting a federal court addressing a similar request, the *Bridgewater* court stated:

>> A trial court must be permitted to distinguish between a manipulative effort to present particular arguments and a sincere desire to dispense with the benefits of counsel. The circumstances surrounding [petitioner's] purported waiver of his right to counsel and the assertion of his right to proceed without counsel in this case suggest more a manipulation of the system than an unequivocal desire to invoke his right of self-representation.

15

> *Bridgewater,* 2000-1529 at p. 19, 823 So.2d at 895.[13]
>
> Similarly in the instant matter, based on the record, we find that [petitioner's] request for self-representation was an attempt to manipulate the court system, rather than a sincere desire to dispense with counsel. *See Leger,* 2005-0011 at p. 57, 936 So.2d at 150. *See also State v. Hegwood,* 345 So.2d 1179, 1181-82 (La.1977). Accordingly, the trial court did not err in denying [petitioner] the right to represent himself.

*Lay*, 2008 WL 2332261 at 7 (footnoted added).

This court finds that the above determination does not represent an unreasonable application of Supreme Court law to the facts of this case. Accordingly, the instant claim for habeas corpus relief is without merit.

### Claim 5):  Insufficiency of Evidence

Petitioner argues there was insufficient evidence to support his conviction because the state failed to prove that the substance he possessed was cocaine and not macadamia nuts.

Petitioner raised this same claim in connection with his direct appeal. In addressing the instant claim, the Louisiana First Circuit Court of Appeal first examined applicable law as enunciated by the Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), along with applicable state law.

---

[13]The federal court which the *Bridgewater* court quoted was the United States Fourth Circuit Court of Appeals. The decision from which the quote was taken is *U.S. v. Frazier-El*, 204 F.3d 553, 560 (4th Cir.), *cert. denied*, 531 U.S. 994, 121 S.Ct. 487, 148 L.Ed.2d 459 (2000).

A conviction based on insufficient evidence cannot stand as it violates Due Process. *See* U.S. Const. amend. XIV; LSA-Const. art. I, § 2. The standard of review for the sufficiency of the evidence to uphold a conviction is whether or not, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). *See also* LSA-C.Cr.P. art. 821(B); *State v. Ordodi,* 2006-0207, p. 10 (La.11/29/06), 946 So.2d 654, 660; *State v. Mussall,* 523 So.2d 1305, 1308-09 (La.1988). The *Jackson v. Virginia* standard of review, incorporated in Article 821, is an objective standard for testing the overall evidence, both direct and circumstantial, for reasonable doubt. When analyzing circumstantial evidence, LSA-R.S. 15:438 provides that the factfinder must be satisfied the overall evidence excludes every reasonable hypothesis of innocence. *See State v. Patorno,* 2001-2585, pp. 4-5 (La.App. 1 Cir. 6/21/02), 822 So.2d 141, 144.

The trier of fact is free to accept or reject, in whole or in part, the testimony of any witness. Moreover, when there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. The trier of fact's determination of the weight to be given evidence is not subject to appellate review. An appellate court will not reweigh the evidence to overturn a factfinder's determination of guilt. *State v. Taylor,* 97-2261, pp. 5-6 (La.App. 1 Cir. 9/25/98), 721 So.2d 929, 932.

*Lay*, 2008 WL 2332261 at *12 -13.

Thereafter, the state appellate court reviewed the elements of the pertinent crime.

Attempted possession of cocaine is a specific intent crime. *See* LSA-R.S. 14:27(A); *State v. Sylvia,* 2001-1406, pp. 8-9 n. 1 (La.4/9/03), 845 So.2d 358, 364 n. 1. Specific intent is a state of mind. It need not be proven as a fact and may be inferred from the circumstances present and the actions of the defendant. *State v. Hamilton,* 2002-1344, p. 11 (La.App. 1 Cir. 2/14/03), 845 So.2d 383, 392, *writ denied,* 2003-1095 (La.4/30/04), 872 So.2d 480.

17

The purchase of a noncontrolled substance that the defendant subjectively believes to be a controlled substance can constitute an attempt to possess.   The defendant's objective conduct, taken as a whole, must unequivocally corroborate the required subjective intent to purchase or sell actual narcotics.  *See Harris,* 2002-1589 at pp. 6-7, 846 So.2d at 714 (relying in part on federal authority, *United States v. Pennell,* 737 F.2d 521 (6th Cir.1984), *cert. denied,* 469 U.S. 1158, 105 S.Ct. 906, 83 L.Ed.2d 921 (1985), and *United States v. Everett,* 700 F.2d 900, 908 (3rd Cir.1983) (which found untenable the impossibility defense)).

*Lay,* 2008 WL 2332261 at *13.

The Louisiana First Circuit then reviewed the evidence presented at trial.

Deputy Washington testified at trial that, while in his undercover capacity as a drug dealer, [petitioner], with $50 in cash on his person, took possession of five rocks of facsimile crack cocaine. [Petitioner] gave four of the rocks back to Deputy Washington and kept one in his possession, which he indicated he wanted to try to smoke.  Deputy Washington asked [petitioner] if he had a pipe.  [Petitioner] informed Deputy Washington that he did not use a pipe to smoke crack.  [Petitioner] then pulled out rolling papers and informed Deputy Washington that he was going to smoke the rock in the paper. [Petitioner] was arrested prior to rolling the rock.

The transaction was videotaped and audiotaped.  [Petitioner] can be seen in the videotape in possession of the rocks.  [Petitioner] can be heard on the audiotape saying, "Let me test it.  I got the money."  Also heard on the audiotape is Deputy Washington asking, "You smoke that shit in paper?" and [petitioner] responding, "Yeah."  On cross-examination, [petitioner] testified at trial that he never had the five rocks, and that he was not going to buy a rock from Deputy Washington.

*Lay,* 2008 WL 2332261 at 13.

The Louisiana First Circuit Court of Appeal reasoned:

18

       In finding [petitioner] guilty, it is clear that the jury rejected [petitioner's] testimony and found that Deputy Washington's testimony, along with video and audio recordings corroborating that [petitioner] took possession of the facsimile crack cocaine, established [petitioner's] guilt. The fact that the record contains evidence which conflicts with the testimony accepted by a trier of fact does not render the evidence accepted by the trier of fact insufficient. *State v. Quinn,* 479 So.2d 592, 596 (La.App. 1 Cir.1985).   We are constitutionally precluded from acting as a "thirteenth juror" in assessing what weight to give evidence in criminal cases.  *See State v. Mitchell,* 99-3342, p. 8 (La.10/17/00), 772 So.2d 78, 83.

       After a thorough review of the record, we find that the evidence supports the jury's verdict.  We are convinced that viewing the evidence in the light most favorable to the State, any rational trier of fact could have found beyond a reasonable doubt, and to the exclusion of every reasonable hypothesis of innocence, that [petitioner] was guilty of attempted possession of cocaine.

*Lay*, 2008 WL 2332261 at 13 -14.

       This court finds that the above does not represent an unreasonable application of *Jackson*, *supra*, to the facts of this case.  In his Traverse (rec. doc. 62, p. 1), petitioner argues that he "did not subjectively believe the non-controlled substance was in fact a controlled substance" as evidenced by his audiotaped statement, "let me test it."  However, as noted above, the audiotape was played for the jury.  They heard petitioner state, "let me test it."  Obviously, based upon the guilty verdict, petitioner's statement in this regard was insufficient to convince the jury that he was not guilty of attempted possession of cocaine.  Accordingly, this court finds petitioner's claim for federal habeas corpus relief is without merit.

**Claim 7):  Constructive Amendment of Bill of Information**

Petitioner asserts that the bill of information was improperly constructively amended after the jury was sworn in and seated.  According to petitioner, the bill of information charged him with actual possession of cocaine and, to his prejudice, jurors were notified of this fact.  Thereafter, however, the bill of information was constructively amended as prosecutors argued that petitioner was guilty not of actual possession, but of attempted possession of cocaine.  However, according to petitioner, such a constructive amendment to the bill of information was unconstitutional.  The damage had been done.  Jurors had been informed of the charge as set forth in the bill of information.

Petitioner raised this same claim on direct appeal.  As explained by the Louisiana First Circuit:

> The particular contention by [petitioner] is that the crime charged in the bill of information suggests that he was in actual possession of cocaine.  Count 1 of the bill of information states, "R.S. 40:27:967C [sic] ATTEMPTED POSSESSION OF A SCHEDULE II CONTROLLED DANGEROUS SUBSTANCE, by having in possession, a Schedule II controlled dangerous substance, to-wit: COCAINE."  [Petitioner] notes that the charge, as quoted above, was read to the jury at the start of trial, and that this caused confusion for the jury and misunderstanding for [petitioner] since no actual cocaine was involved in the case.

*Lay,* 2008 WL 2332261 at 11.

The state appellate court rejected petitioner's claim, reasoning:

Notwithstanding that the bill of information may be technically incorrect in suggesting possession of actual cocaine, a review of the record indicates that [petitioner] was fairly informed of the charge against him and that he has not been prejudiced by surprise or lack of notice. *See State v. James,* 305 So.2d 514, 516-20 (La.1974); *State v. Barclay,* 591 So.2d 1178, 1181-82 (La.App. 1 Cir.1991), *writ denied,* 595 So.2d 653 (La.1992). Well before trial, [petitioner] was aware that the State intended to prove that an undercover officer sold [petitioner] facsimile crack cocaine. In the State's discovery provided to [petitioner], several documents indicated that facsimile rock cocaine was used in the transaction. In one of his pro se motions to quash, [petitioner] stated that the undercover officer was in possession of "peanuts." In another pro se motion to quash, [petitioner] stated that the undercover officer had "facsimile rocks of cocaine." In the preliminary examination, Detective Powe testified that macadamia nuts were used to represent the crack cocaine in the transactions.

Similarly, the jury was not misled by surprise or lack of notice. In his opening statement, the prosecutor told the jury that the undercover officer was supplied with fake crack cocaine. He further stated, "The police carved up pieces of macadamia nuts, so that if somebody got away with it and they weren't able to catch them, they weren't getting away with illegal dope." During trial, Deputy Washington testified that he was provided with fake crack cocaine. Also during trial, Detective Powe testified that he retrieved the fake crack cocaine that had been supplied to [petitioner].

The record indicates that [petitioner] was well aware of the allegation against him and was in no way prejudiced by the fact that the bill of information included the additional "by having in possession" language. *See State v. Galindo,* 2006-1090, p. 13 (La.App. 4 Cir. 10/3/07), 968 So.2d 1102, 1112, *writ denied,* 2007-2145 (La.3/24/08), 977 So.2d 952.

*Lay*, 2008 WL 2332261 at *12.

To warrant federal habeas corpus relief an alleged error, in this case, a technically incorrect bill of information that was constructively amended at trial, must result in a violation of petitioner's right to due process. The federal habeas court's role is limited

21

to determining whether an alleged trial error is so extreme that it denied petitioner a fair trial. *Andrade v. McCotter* 805 F.2d 1190, 1193 (5th Cir. 1986); *see also Mattheson v. King,* 751 F.2d 1432, 1445 (5th Cir.1985).  Clearly, as reflected above, petitioner was not denied a fair trial by virtue of the alleged constructive amendment of his bill of information.  Accordingly, the instant claim is without merit.

### Claims 8) and 10):  Ineffective Assistance of Counsel

The seminal Supreme Court decision regarding ineffective assistance of counsel is *Strickland v. Washington*, 466 U.S. 668, 697, 104 S.Ct. 2052, 2069, 80 L.Ed.2d 674 (1984), wherein the Court held that in order to prove that counsel was unconstitutionally ineffective, petitioner must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the defense.  If a court finds that petitioner has made an insufficient showing as to either one of the two prongs of inquiry, it may dispose of the claim without addressing the other prong.

Under the deficient performance prong of the *Strickland* test, "it is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" *Lockhart v. Fretwell*, 506 U.S. 364, 371, 113 S.Ct. 838, 844, 122 L.Ed. 2d 180 (1993), *citing Strickland*, 466 U.S. at 690, 104 S.Ct. at 2066.  To prove prejudice under the *Strickland* standard, petitioner "must show that there is a reasonable

probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068.

Petitioner argues that counsel was ineffective due to his conflict of interest based on his desire to withdraw from the case, informing the court of two letters he received from petitioner threatening his life, the trial judge's life, the prosecutor's life and the prosecutor's wife's life.  As a result of this conflict of interest, petitioner claims that counsel failed to investigate and/or develop for trial petitioner's only plausible defense of insanity and/or intoxication.

As noted during the court's recitation of the applicable facts, the attempted drug transaction at issue was videotaped and audiotaped and played for the jury.[14]  As such, jurors could judge for themselves whether petitioner's mental acuity was impaired during the pertinent time period.  Petitioner has failed to show how he was prejudiced by counsel's alleged failure to develop his "only plausible defense."

Petitioner next claims that counsel was ineffective due to his failure to object to the fact that the jury's guilty verdict was based upon petitioner's purchase of an imitation drug (macadamia nuts), a "crime" not set forth in the bill of information.  However, as noted

---

[14]In his Traverse (rec. doc. 62, p. 2), petitioner asserts that the "video/audio" tape played for the jury was not the entire tape, but rather, "was a spliced together DVD to which no objection was made."  Petitioner, however, provides no support for the above assertion nor does he suggest how he was prejudiced by the alleged "spliced together DVD".

above, petitioner suffered no prejudice due to the fact that the bill of information may have been "technically incorrect".  Petitioner, along with jurors, were well aware of the fact that it was fake crack cocaine, as opposed to real cocaine, that petitioner was attempting to purchase from the undercover officer.  Accordingly, petitioner suffered no prejudice by counsel's failure to object to the alleged discrepancy in the bill of information and the crime with which petitioner was actually charged and convicted of committing.

Petitioner next argues that counsel was ineffective due to his failure to investigate the constitutionality of enhancing petitioner's sentence under the habitual offender statute after petitioner had completed serving the sentence.  However, as discussed *infra*,[15] petitioner suffered no violation of his constitutional rights by virtue of the fact that he completed serving his original sentence on May 25, 2007, and he was adjudicated a fourth felony offender on May 31, 2007.  As the Louisiana Fourth Circuit noted, the State filed a multiple bill against petitioner on March 30, 2007.  Thus, petitioner was well aware of the fact that the State intended to charge him as a multiple offender.  Because petitioner suffered no violation of his constitutional rights, he was not prejudiced by counsel's failure to investigate this matter.  Thus, the instant ineffectiveness claim is without merit.

Petitioner next asserts that counsel was ineffective due to his failure to object to the alleged unconstitutionality of his prior convictions used to enhance his present

---

[15]*See* pp. 29-31.

sentence.  Petitioner, however, has the burden of proving that his prior convictions were unconstitutional.  Petitioner has failed to satisfy his burden in this regard.  Accordingly, petitioner has failed to show that counsel was deficient and/or that he was prejudiced by counsel's failure to object to the prior convictions.

Petitioner also argues that appellate counsel was ineffective in failing to raise the above arguments on appeal in support of the claim that trial counsel was ineffective.  To prove ineffectiveness on the part of appellate counsel, a petitioner must satisfy the two-prong test enunciated in *Strickland.  See Busby v. Dretke*, 359 F.3d 708, 714 (5th Cir.), *cert. denied*, 541 U.S. 1087, 124 S.Ct. 2812, 159 L.Ed.2d 249 (2004) (citations omitted) ("The familiar *Strickland* framework applies to a prisoner's claim that his appellate counsel was ineffective for failing to raise a certain issue on appeal.").  Because the court has found no merit to the above arguments in support of petitioner's claim that trial counsel was ineffective, clearly petitioner was not prejudice by appellate counsel's failure to raise said arguments on appeal.  Accordingly, petitioner's claim of ineffective assistance of appellate counsel is without merit.

**Claim 9):  Lack of Authority to Impose Original and Multiple Bill Sentences**

Petitioner contends that Judge Coady lacked authority to impose petitioner's original sentence and his habitual offender sentence due to the fact that petitioner, at the time these sentences were imposed, had outstanding motions pending before the trial court.  Again, however, petitioner has failed to identify a United States Supreme Court ruling which

holds that a defendant's due process rights are violated by virtue of a trial court rendering sentence while defendant has motions pending before the court.  Further, this court is not aware of any such Supreme Court rulings.

As stated earlier, where the jurisprudence of the United States Supreme Court does not clearly support a petitioner's claim, it cannot be said that a state court's ruling impermissibly ran afoul of "clearly established Federal law" for purposes of § 2254 (d)(1). *See Wright*, *supra*; *Gibson*, *supra*.  Accordingly, pursuant to the AEDPA's deferential standard, petitioner's claim must be rejected.

### Claim 11):  Improperly Denied Post-Conviction Relief

Petitioner seeks federal habeas relief based on his claim that he was summarily denied state post-conviction relief without a hearing.  However, petitioner's claim in this regard does not entitle him to federal habeas corpus relief as habeas petitioners have no constitutional right to state post conviction review, much less to a state post-conviction hearing. *See Lackawana County District Attorney v. Coss*, 532 U.S. 394, 402-403, 121 S.Ct. 1567, 1573, 149 L.Ed.2d 608 (2001) (no constitutional mandate that states provide post-conviction review) (*citing Pennsylvania v. Finley,* 481 U.S. 551, 557, 107 S.Ct. 1990, 1994, 95 L.Ed.2d 539 (1987) (no constitutional right to state post-conviction review)) (additional citation omitted); *Quinn v. Dwyer*, 2008 WL 783148, *6 (E.D.Mo. March 20, 2008) ("'an infirmity in a state post-conviction proceeding does not raise a constitutional issue cognizable

26

in a federal habeas petition'") (*quoting Gee v. Groose*, 110 F.3d 1346, 1351 (8th Cir. 1997))

(interim quotations omitted).  Accordingly, the instant claim for habeas relief is without

merit.

> ### Claims 12) and 13):  Efforts to Seek Relief from State Courts Are Futile and He Has Been Denied Documents in His Effort to Seek Relief from the State Courts

Petitioner once again complains about the state post-conviction process,

claiming that efforts to seek relief are futile and that he has been denied documents in his

effort to seek post-conviction relief from the state courts.  Again, however, petitioner has no

constitutional right to state post-conviction review.  As such, alleged infirmities in the review

process do not raise a constitutional issue cognizable in a federal habeas application.

### Claim 15): Prior Convictions Improperly Used to Enhance Sentence

Petitioner complains that two of his prior convictions, "# 130/364" and "#

131/275", for which he has "served all sentences in full", could not properly be used to

enhance his present sentence because there were infirmities associated with these prior

convictions.  Specifically, petitioner asserts that "[c]ount 1 and 2 of # 130/364 fails to set

forth the mens rea for violation of La. R.S. 14:72 [Forgery] insofar as it fails to identify the

person whose signature [he] falsified or altered with the intent to defraud as mandated by due

process."  (Rec. doc. 12, p. 1).  Petitioner further asserts that "[n]either the trial court [n]or

counsel correctly explained the elements of each separate offense [he] was pleading guilty

to and how [he] committed it prior to acceptance of the guilty pleas rendering said pleas involuntary and not knowing[]."  (Rec. doc. 12, p. 2).

The Supreme Court has made clear that generally, "federal postconviction relief is [not] available when a prisoner challenges a current sentence on the ground that it was enhanced based on an allegedly unconstitutional prior conviction for which the petitioner is no longer in custody." *Lackawanna*, 532 U.S. at 396-397, 121 S.Ct. at 1570.  The Court held:

> [O]nce a state conviction is no longer open to direct or collateral attack in its own right because the defendant failed to pursue those remedies while they were available (or because the defendant did so unsuccessfully), the conviction may be regarded as conclusively valid....  If that conviction is later used to enhance a criminal sentence, the defendant generally may not challenge the enhanced sentence through a petition under § 2254 on the ground that the prior conviction was unconstitutionally obtained.

*Id.*, 532 U.S. at 403-404, 121 S.Ct. at 1574.[16]  Thus, the instant claim for habeas corpus relief is without merit.

---

[16]There are two exceptions to the above general rule.  One exception is with respect to habeas petitions challenging an enhanced sentence "on the basis that the prior conviction used to enhance the sentence was obtained where there was a failure to appoint counsel in violation of the Sixth Amendment...." *Id.*, 532 U.S. at  404, 121 S.Ct. At 1574.  The second exception might lie, albeit in a rare circumstance, where through no fault of his own, there was no channel of review actually available to petitioner through which he might have timely challenged his prior conviction.  *Id.*, 532 U.S. at 405-406, 121 S.Ct. At 1575.  Neither of these exceptions are applicable in the instant situation.

### Claim 16): State Could Not Properly Adjudicate Him a Multiple Offender and Resentence Him After He Had Fully Served His Original Sentence

Petitioner argues that the enhancement of his sentence constituted a violation of his protection against double jeopardy and violated his right to due process since he had completed serving his original sentence for the instant conviction (attempted possession of cocaine); therefore, the state could not institute habitual offender proceedings to enhance the instant conviction.

As the Louisiana First Circuit explained, in addressing the instant claim on direct appeal:

> [Petitioner] was adjudicated a fourth felony habitual offender on May 31, 2007. Because he was eligible for diminution of sentence for the instant conviction, [petitioner] was released from the Department of Public Safety and Corrections on May 25, 2007, six days prior to the multiple offender hearing and [petitioner's] adjudication as a fourth felony habitual offender. According to [petitioner], since completion of a sentence ordinarily creates a legitimate expectation of finality, the State was precluded from enhancing a sentence after the sentence was already served in full.

*Lay*, 2008 WL 2332261 at *16.

Thereafter, the state appellate court reasoned:

> The State filed a multiple offender bill of information on March 30, 2007, the day after [petitioner] was found guilty of the instant offense, and over two weeks before [petitioner] was sentenced on April 16, 2007, to two

29

and one-half years for the instant offense.  Thus, even before he was
sentenced, [petitioner] knew the State intended to charge him as a multiple
offender.  More importantly, our supreme court in *State v. Muhammad,* 2003-
2991, p. 17 (La.5/25/04), 875 So.2d 45, 56, held that there is no bright-line
deadline by which the habitual offender proceeding must be completed.  Thus,
despite that he was not adjudicated as a multiple offender until six days after
his full sentence completion date, [petitioner's] due process rights were not
violated.  *See Muhammad,* 2003-2991 at pp. 13-17, 875 So.2d at 54-56.

[Petitioner's] double jeopardy argument is also baseless.  The Habitual
Offender Law creates no independent offense, but rather prescribes the
conditions under which there is an enhanced penalty for the current offense.
For this reason, considerations of double jeopardy simply do not apply.  *State
v. Boykin,* 34,133, p. 2 (La.App. 2 Cir. 12/6/00), 774 So.2d 1074, 1075.  *See
also Dorthey,* 623 So.2d [1276,] 1279 [(La. 1993)] (explaining that because the
multiple offender hearing is not a trial, legal principles such as double jeopardy
do not apply).

*Lay*, 2008 WL 2332261 at *16 -17.

The above reasoning is in accordance with federal law.  In *Gryger v. Burke*,

334 U.S. 728, 732, 68 S.Ct. 1256, 1258, 92 L.Ed.1683 (1948), the Supreme Court made clear

that a multiple offender adjudication cannot constitute a violation of a defendant's protection

against double jeopardy since a "sentence as a fourth offender or habitual criminal is not to

be viewed as either a new jeopardy or additional penalty....  It is a stiffened penalty for the

latest crime...."  Further, petitioner clearly suffered no violation of his right to due process

since, as the state appellate court noted, petitioner was notified that he was being charged as

a multiple offender the day after he was found guilty of attempted possession of cocaine.

Accordingly, the instant claim is without merit.

## RECOMMENDATION

It is therefore **RECOMMENDED** that the application for federal habeas corpus relief filed on behalf of petitioner be **DENIED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within 14 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  28 U.S.C. §636(b)(1); *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996)(*en banc*).[17]

New Orleans, Louisiana, this __21st__ day of _____June_____, 2011.



LOUIS MOORE, JR.

United States Magistrate Judge

---

[17]*Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. §636(b)(1) was amended to extend that period to fourteen days.